UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br>　　　　　v.<br><br>ONE 2006 JEEP GRAND CHEROKEE LAREDO<br>　VIN: 1J4GR48K26C222400,<br><br>　　　　　　　　　　　Defendant. | **REPORT**<br>**and**<br>**RECOMMENDATION**<br><br>11-CV-00848S(F) |

APPEARANCES:　　　WILLIAM J. HOCHUL, JR.
　　　　　　　　　　United States Attorney
　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　KEVIN D. ROBINSON
　　　　　　　　　　Assistant United States Attorney, of Counsel
　　　　　　　　　　Federal Centre
　　　　　　　　　　138 Delaware Avenue
　　　　　　　　　　Buffalo, New York 14202

　　　　　　　　　　ANTHONY J. TOMAINO, *Pro Se* Claimant
　　　　　　　　　　3030 Gary Drive
　　　　　　　　　　North Tonawanda, New York 14120

## **JURISDICTION**

　　　This case was referred to the undersigned by Hon. William M. Skretny on September 13, 2012, for pretrial matters including report and recommendation on dispositive motions. The matter is presently before the court on Plaintiff's motion to strike the claim of Claimant Anthony J. Tomaino (Doc. No. 15), filed September 6, 2012.

## BACKGROUND and FACTS[1]

On May 13, 2011, Andrea J. Tomaino ("Andrea" or "Tomaino") and Nathan Daniels ("Daniels"), were arrested and charged with three counts of Criminal Sales of Controlled Substances and Criminal Possession of Controlled Substances, both Class B felonies under New York law ("the criminal charges"). The criminal charges relate to three controlled purchases of oxycodone executed on April 14, 2011, April 15, 2011, and May 13, 2011. For each controlled purchase, a confidential informant ("CI"), at the behest of the Niagara County Drug Task Force ("NCDTF"), arranged to meet Andrea in the parking lot of a convenience store located in North Tonawanda, New York. Prior to each controlled purchase, the CI was searched for money and contraband by an NCDTF agent and, the search being negative, was given official agency funds ("OAF"), and a recording device. Each controlled purchase occurred in the convenience store parking lot where the CI met Andrea, driving a 2006 Jeep Grand Cherokee Laredo, bearing vehicle identification number ("VIN") 1J4GR48K26C222400 ("Defendant Vehicle"). The CI entered the Defendant Vehicle's back seat, gave the OAF purchase money to Andrea, receiving from Daniels, who was in the Defendant Vehicle's front passenger seat, yellow tablets. After the CI exited the Defendant Vehicle, Andrea and Daniels drove away in the Defendant Vehicle and the CI provided the yellow tables to the NCDTF who sent the tablets to the Niagara County Forensic Laboratory where the tablets were identified as oxycodone. After the May 13, 2011 controlled purchase, NCDTF agents stopped the Defendant Vehicle, arresting Andrea and Daniels. The

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

OAF funds provided the CI for the third controlled purchase were recovered from Daniels, and the Defendant Vehicle, having been used to transport and facilitate the transportation, sale, receipt, or possession of a controlled substance, *i.e.*, oxycodone, was seized pursuant to 21 U.S.C. § 881(a)(4) ("§ 881(a)(4)").

The Defendant Vehicle was registered to Andrea Tomaino. A May 18, 2011 inquiry with New York State Department of Motor Vehicles ("DMV") revealed no recorded liens against the Defendant Vehicle. On July 15, 2011, Andrea's father, Anthony J. Tomaino ("Claimant"), submitted a claim to the Drug Enforcement Agency ("DEA"), seeking to halt the administrative forfeiture proceedings against the Defendant Vehicle, asserting Claimant had an outstanding lien in the amount of $ 4,500 against the Defendant Vehicle.

On October 7, 2011, Plaintiff commenced the instant action *in rem* against the Defendant Vehicle, filing the Verified Complaint for Forfeiture (Doc. No. 1) ("Forfeiture Complaint") seeking forfeiture of the Defendant Vehicle pursuant to § 881(a)(4). On October 13, 2011, Chief District Judge William M. Skretny signed an Order for Issuance of an Arrest Warrant *In Rem* with regard to the Defendant Vehicle ("Arrest Warrant"). On October 17, 2011, Andrea and Claimant were served with a copies of the Direct Notice of Forfeiture Action, Forfeiture Complaint, and Arrest Warrant.

On October 19, 2011, as required by Rule G(4)(a)(iv)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, a Notice of Civil Forfeiture was posted on Plaintiff's official website, www.forfeiture.gov, for 30 consecutive days. The Arrest Warrant, which was returned executed as to the Defendant Vehicle on October 26, 2011, advised that anyone with a legal interest in the

Defendant Vehicle was required to file a verified claim with the Clerk of the United States District Court for the Western District of New York within 60 days from October 19, 2011, the first day of publication pursuant to 18 U.S.C. § 983(a)(4)(A), and Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and, within 21 days of filing a verified claim, to file an Answer to the Forfeiture Complaint pursuant to Fed.R.Civ.P. 12.

On November 22, 2011, Claimant served on the Office of the United States Attorney a Verified Claim ("Verified Claim"), dated November 21, 2011, alleging an equitable interest in the Defendant Vehicle, demanding the vehicle's return, and asserting Claimant's right to defend against the forfeiture action. The Verified Claim was filed on November 28, 2011 (Doc. No. 6). In his Answer to the Forfeiture Complaint, filed January 22, 2012 (Doc. No. 12) ("Answer"), Claimant denies any prior knowledge of the Defendant Vehicle's involvement in the activity giving rise to Plaintiff's seizure of the Defendant Vehicle. Answer ¶ 14. Claimant further asserts that in April 2009, he purchased the Defendant Vehicle for his daughter, Andrea, whose previous vehicle was totaled, for Andrea to use to transport herself to work and school. *Id.* ¶ 3. According to Claimant, the Defendant Vehicle was registered in Andrea's name for insurance purposes. *Id.* ¶ 4. Claimant avers he paid $ 13,500 for the Defendant Vehicle, listing the source of such funds as $ 3,500 from the insurance proceeds for Andrea's totaled vehicle, and $ 10,000 from a home equity line of credit ("HELOC") issued to Claimant. *Id.* ¶¶ 5-6. Claimant explained that Andrea, when able to do so, paid him $ 300 cash bi-weekly toward Claimant's payments on the HELOC, and Claimant contemporaneously recorded such payments in a notebook. *Id.* ¶¶ 9-10.

4

Because Claimant was not aware that he could file a lien securing his legal interest in the Defendant Vehicle, Claimant did not file such a lien with the DMV, yet maintained he had since filed a lien. *Id.* ¶ 7. According to Claimant, Andrea was the principal driver of the Defendant Vehicle, which Claimant drove only on "rare occasions" to take the vehicle for repairs and inspections, sometimes performing oil changes himself on the Defendant Vehicle. *Id.* ¶¶ 18-19, 22. When not in use, the Defendant Vehicle generally was parked at Andrea's apartment. *Id.* ¶ 21. A copy of the purchase contract for Defendant Vehicle indicates the purchase price as $ 11,500, with and additional $1,161 in taxes and fees, totaling $ 12,661 which was paid by a bank check by Claimant. On March 13, 2012, Claimant's lien on the Defendant Vehicle was filed with the DMV.

On September 6, 2012, Plaintiff filed the instant motion (Doc. No. 15) seeking to strike Claimant's claim ("motion to strike"), for lack of standing. The motion to strike is supported by the attached Affidavit of Assistant United States Attorney Kevin D. Robinson in Support of Motion to Strike ("Robinson Affidavit"), with exhibits 1 through 4 ("Plaintiff's Exh(s). __"), and the Memorandum in Support of the United States' Motion to Strike Claim (Doc. No. 16) ("Plaintiff's Memorandum"). By Order filed September 20, 2012 (Doc. No. 18), Claimant's response to the motion to strike was to be filed by October 16, 2012, with Plaintiff to file any reply by November 2, 2012. To date, Claimant has not filed any response to the motion to strike. Oral argument was deemed unnecessary.

Based on the following discussion, Plaintiff's motion to strike for lack of standing should be DENIED.

## DISCUSSION

Claimant's Verified Claim contests the forfeiture of Defendant Vehicle pursuant to 21 U.S.C. § 881(a)(1) and (4) which provides that "[p]roperty that is subject to forfeiture to the United States includes "[a]ll conveyances, including . . . vehicles, . . . which are used, or are intended for use, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property" including "controlled substances." Plaintiff seeks to dismiss the Claimant's Verified Claim for lack of standing under Article III of the United States Constitution to contest forfeiture in a civil forfeiture case brought in federal court, Plaintiff's Memorandum at 8-11, because Claimant is an unsecured creditor, *id.* at 11-12, and because Claimant, by failing to timely perfect his legal interest in Defendant Vehicle, has forfeited such interest. *Id.* at 12-13. As stated, Background and Facts, *supra*, at 5, Claimant, proceeding *pro se*, has not filed any papers in opposition to Plaintiff's motion to dismiss.

According to Plaintiff, Claimant is without standing to contest the civil forfeiture proceeding against Defendant Vehicle because Claimant has failed to demonstrate he has a legally cognizable interest in the Defendant Vehicle. Plaintiff's Memorandum at 8-9. In particular, Plaintiff contends Claimant, by failing to file a lien relative to the unpaid debt on the Defendant Vehicle prior to its use in the drug transactions giving rise to the forfeiture, has only a general unsecured interest in Defendant Vehicle, *id.* at 9-12, and Claimant's filing of the lien after Plaintiff's interest attached through forfeiture, is insufficient to give Claimant's interest priority over Plaintiff's interest. *Id.* at 12-13.

"Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *In re Gucci*, 126 F.3d 380, 387-88 (2d Cir. 1997) (quoting *Warth v. Seldin*, 442 U.S. 490, 498 (1975)), *cert. denied*, 520 U.S. 1196 (1997). "[T]o contest a government forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (citing *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)).

With regard to statutory standing, the Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), "also govern civil forfeiture claims." *Cambio Exacto, S.A.*, 166 F.3d at 526, n. 3 (*citing* 18 U.S.C. § 981(b)(2); and 21 U.S.C. § 881(b)). As relevant to the instant case, to establish statutory standing pursuant to Supplemental Rule G, a claimant must file a verified claim "no later than 60 days after the first day of publication of an official internet government forfeiture site . . . ." Supplemental Rule G(5)(a)(ii)(B). In the instant case, the verified claim was filed on November 28, 2011, which was less than 60 days after the first publication of the forfeiture on the official internet forfeiture site, *i.e.*, October 19, 2011, and, as such, was timely filed to establish statutory standing. *See Cambio Exacto, S.A.*, 166 F.3d at 526 (holding two claimants whose verified claims were timely filed under Supplemental Rules had statutory standing, but remaining claimant whose verified claim was not timely filed lacked statutory standing). Having established Claimant has statutory standing to contest the forfeiture proceedings, the court turns its attention to whether Claimant also has standing under

7

Article III.

"[T]o interpose a challenge to a civil *in rem* forfeiture action brought by the government, a claimant must have standing within Article III of the Constitution." *United States v. Twenty Miljam-350 IED Jammers*, 669 F.3d 78, 91 (2d Cir. 2011) (citing *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999)). Article III standing is defined as "a 'sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" *Cambio Exacto, S.A.*, 166 F.3d at 526-27 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972)). To have standing to claim return of seized property subject to forfeiture, a claimant in a forfeiture action must demonstrate an "ownership interest" in the property at the time of the seizure. 18 U.S.C. § 983(d)(6). "'[A]n allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture.'" *Cambio Exacto, S.A.*, 166 F.3d at 527 (quoting *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1158 (2d Cir. 1994)).

Because "it is *injury* that is at the heart of the standing question," standing to contest the forfeiture of seized property in a civil forfeiture case brought in federal court may be sustained as to the "owner" of the seized property, which includes one in possession of property at the time of the seizure, or a lien holder with a secured interest in the seized property. *Cambio Exacto, S.A.*, at 527 (italics in original). A "lien" is among the type of interests sufficient to establish standing, *id.*, in contrast to a "general, unsecured interest in . . . the property" which is not; rather, "a person with only a general unsecured interest in, or claim against, the property or estate of another," is not considered an "owner" for purposes of establishing standing in a civil forfeiture action.

18 U.S.C. § 983(d)(6)(B)(I) ("§ 983(d)(6)(B)(i)"). As such, an unsecured creditor's interest in seized property subject to forfeiture has been held insufficient to provide Article III standing because the seizure of the property does not result in a legally cognizable injury to the unsecured creditor. *Cambio Exacto, S.A.*, 166 F.3d at 527 ("It is because of the lack of proven injury that we have, for example, denied standing to 'straw' owners who do indeed 'own' the property, but hold title to it for someone else. Such owners do not themselves suffer an injury when the property is taken." (citing *United States v. 500 Delaware Street*, 113 F.3d 310, 312 (2d Cir. 1997))).

State law determines whether a claimant's interest in seized property establishes the requisite interest and, thus, standing to contest the forfeiture. *United States v. One 2004 Land Rover Range Rover, VIN: SALME11464A175730 seized from Douglas Turnage*, 2009 WL 909669, at *3 (W.D.N.Y. Mar. 31, 2009) ("State law determines whether the property interest of a claimant in seized property is sufficient to establish standing to contest a forfeiture of seized property." (citing cases)), *aff'd*, 369 Fed.Appx. 208 (2d Cir. 2010). Here, relevant New York law defines the "owner" of a motor vehicle as "[a] person, other than a lien holder, having the property in or title to a vehicle" and "includes a person entitled to the use and possession of a vehicle or vessel subject to a security interest in another person and also includes any lessee or bailee of a motor vehicle . . . having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days." N.Y. Veh. & Traf. Law § 128 (McKinney's 1985). A lienholder with a secured interest in the vehicle may also challenge its seizure. *Cambio Exacto, S.A.*, 166 F.3d at 527. To establish standing to contest forfeiture based on a security interest, the security interest must be perfected, *i.e.*, the existing certificate of title, an

9

application for a certificate of title listing the name and address of the lienholder, and the required fee, are delivered to the Commissioner of the Department of Motor Vehicles.  N.Y. Veh. & Traf. Law § 2118(b)(1)(A) ("§ 2118(b)(1)(A)").  In the instant case, although the evidence in the record establishes that Andrea is the owner of Defendant Vehicle, the record also establishes that Claimant has standing to challenge the *in rem* forfeiture proceedings as the holder of a perfected lien on Defendant Vehicle upon compliance with § 2118(b)(1)(A).  *See In re Males*, 999 F.2d 607, 612 (2d Cir. 1993) (under New York law, the certificate of title controls notice to third parties as to existence of secured lienholder, rather than registration or other document which may fail to list security holder's interest, and new registration of a motor vehicle will not cut-off perfected security interest).

In particular, although the Purchase Contract denominates as Defendant Vehicle's buyer Andrea Tomaino, see Plaintiff's Exh. 3, who is also listed as the Owner on the Defendant Vehicle's Certificate of Title, Plaintiff's Exh. 4, the address on the Certificate of Title is not the address for Andrea's apartment, but Claimant's home address, *id.*, and Claimant is denominated as the remitter on the official bank check used to purchase Defendant Vehicle on April 28, 2009. Plaintiff's Exh. 3.  In responding to Plaintiff's First Set of Interrogatories and Request for Production of Documents, Answer (Doc. No. 12), Claimant avers he purchased Defendant Vehicle for his daughter, Andrea, in April 2009 to replace her previous vehicle which had been declared a total loss following an automobile accident.  Answer ¶ 3.  Claimant maintains he registered Defendant Vehicle in Andrea's name for insurance purposes.  *Id.* ¶ 4. Claimant asserts he provided the funds for purchased Defendant Vehicle, using $ 3,500

in insurance proceeds from Andrea's previous totaled vehicle, and $ 10,000 from Claimant's home equity line of credit. Documentation for the home equity line of credit establishes Claimant obtained the $ 10,000 line of credit on April 8, 2009 from Key Bank in North Tonawanda, New York, and the official bank check Claimant used to purchase Defendant Vehicle was issued by the same bank. Plaintiff's Exhs. 2 and 3. Claimant maintains he did not record a lien on Defendant Vehicle at the time of purchase because Claimant was unaware he could do so, *id.* ¶¶ 5-7, but that Andrea, whenever she was able to do so, gave Claimant money every other week to make payments on Defendant Vehicle, and Claimant contemporaneously kept track of such payments in a notebook. *Id.* ¶¶ 10-11. Although in response to interrogatories regarding who had dominion and control of Defendant Vehicle, Claimant responded that Andrea was the principal driver of Defendant Vehicle, which Claimant drove only "on rare occasions" to take Defendant Vehicle for maintenance, for which Claimant paid, stating that he performed oil changes on Defendant Vehicle. *Id.* ¶¶ 15-19, 22. When Defendant Vehicle was not in use, it was parked at Andrea's aparment. *Id.* ¶ 21. Significantly, Claimant also stated he had threatened that if Andrea permitted Daniels to drive Defendant Vehicle, Claimant "would cancel her insurance," *id.* at ¶ 16, indicating Claimant retained some control over Defendant Vehicle.

Moreover, although Claimant had not filed a lien with the DMV to secure his interest on Defendant Vehicle prior to the alleged illegal conduct giving rise to the instant forfeiture, the copy of the Certificate of Title Plaintiff submitted in connection with the Motion to Dismiss shows Claimant as a lienholder as of March 13, 2012. *Id.* Attempting to defeat Claimant's status for purposes of challenging the forfeiture, as a

perfected lienholder under New York law, Plaintiff argues that insofar as 21 U.S.C. § 881(h) provides the title to forfeited property relates back to and vests "in the United States upon commission of the act giving rise to forfeiture . . . ," and given Claimant's failure to perfect his lien prior to the commission of the acts giving rise to forfeiture, Claimant had, at best, only an unsecured interest in Defendant Vehicle which is insufficient to give Claimant the requisite legal interest to support standing under Article III to contest forfeiture.  Plaintiff's Memorandum at 10-13.  There is no merit to Plaintiff's contention.

Generally, in an administrative forfeiture proceeding pursuant to 21 U.S.C. § 881(h) ("§ 881(h)"), "[a]ll right, title, and interest in property . . . shall vest in the United States upon commission of the act giving rise to forfeiture . . . ."  Nevertheless, "[i]t is manifest that [§ 881(h)] cannot serve to transfer ownership of the property until there is a final judgment of forfeiture." *Counihan v. Allstate Ins. Co.*, 25 F.3d 109, 112 (2d Cir. 1994)).  If the government were allowed to "'profit from the common-law doctrine of relation back [before] it has obtained a judgment of forfeiture,'" it would be impossible to launch an innocent-owner defense, which was specifically provided for under the forfeiture proceedings statute, 21 U.S.C. § 881.  *United States v. Daccarett*, 6 F.3d 37, 53-54 (2d Cir. 1993) (quoting *United States v. 92 Buena Vista Avenue*, 507 U.S 111, 129 (1993)), *cert. denied*, 511 U.S. 1030 (1994).  "Simply put, the government could not contend that it owned the property until a judgment of forfeiture was entered." *Id.* (citing *Daccarett*, 6 F.3d at 53-54).

In the instant case, although Claimant's lien on Defendant Vehicle was not filed until March 13, 2012, almost one year after the commission of the drug transactions

giving rise to the forfeiture, at this stage of the proceedings, the lien was perfected prior to a final judgment of forfeiture. Because Plaintiff's interest in Defendant Vehicle cannot relate back to such conduct until after a final judgment of forfeiture, Claimant's lien, despite being perfected after the Forfeiture Complaint was filed, has not been cut-off nor made subordinate to Plaintiff's claim. *See United States v. One 2004 Land Rover Range Rover*, 369 Fed.Appx. 208, 210 & n. 2 (2d Cir. Mar. 10, 2010) (noting § 881(h) cannot serve to divest property interest until there is a final judgment of forfeiture (citing cases)); and *United States v. 1998 BMW "I" Convertible, VIN # WBABJ8324WEM20855*, 235 F.3d 397, 400 (8th Cir. 2000) (vacating district court's ruling that claimants lacked standing to challenge forfeiture of vehicle where record contained contradictory evidence directly bearing on question of whether claimaints had ownership interest in vehicle, including revised certificate of title, filed five months after government seized vehicle, showing one claimant as vehicle's lienholder). Accordingly, Claimant has demonstrated a colorable interest, based on claimant's undisputed status as a secured lienholder under New York law, in Defendant Vehicle sufficient to establish standing to contest civil forfeiture of the vehicle pursuant to § 983(d)(6)(B)(i). *Cambio Exacto, S.A.*, 166 F.3d at 527.

**CONCLUSION**

Based on the foregoing, Plaintiff's motion to strike (Doc. No. 15), should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: May 22 , 2013
Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:　　May 22, 2013
　　　　　　Buffalo, New York